UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH POTTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:15CV741 ACL |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

Plaintiff Joseph Potter brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Potter alleged that he was disabled because of anxiety and back pain due to kyphoscoliosis.[1] (Tr. 164.)

An Administrative Law Judge (ALJ) found that Potter had several medically determinable impairments, but did not have a severe impairment or combination of impairments during the relevant period and was not, therefore, disabled.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

---

[1] Lateral and posterior curvature of the spine. *Stedman's Medical Dictionary* 1036 (27th ed. 2000).

## I. Procedural History

Potter protectively filed his application for DIB on February 10, 2012, claiming that he became unable to work due to his disabling condition on June 1, 2004.[2] (Tr. 128-36.) Potter's claim was denied initially. (Tr. 63.) Following an administrative hearing, Potter's claim was denied in a written opinion by an ALJ, dated December 18, 2013. (Tr. 12-26.) Potter then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on March 6, 2015. (Tr. 8, 1-3.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Potter claims that the ALJ erred in "failing to recontact the claimant's treating medical provider as required by 20 C.F.R. § 404.1512(E)." (Doc. 18 at 9.)

## II. The ALJ's Determination

The ALJ found that Potter met the insured status requirements of the Social Security Act on September 30, 2010, and that he has not engaged in substantial gainful activity from his alleged onset date of January 1, 2007, through his date last insured of September 30, 2010.[3] (Tr. 14-15.)

In addition, the ALJ concluded that, through his date last insured, Potter's asthma, thoracolumbar dextroscoliosis,[4] obesity, and learning disorder were medically determinable impairments. (Tr. 15.) The ALJ found that Potter did not have an impairment or combination of impairments that has significantly limited or is expected to significantly limit the ability to perform basic work-related activities for twelve consecutive months through his date last insured. (Tr.

---

[2] Potter subsequently amended his alleged onset of disability date to January 1, 2007. (Tr. 36.)
[3] To qualify for DIB, Potter must prove disability on or before the expiration of his DIB insured status. *Davidson v. Astrue*, 501 F.3d 987, 989 (8th Cir. 2007) ("[w]hen an individual is no longer insured for Title II disability purposes, we will only consider [his] medical condition as of the date [he] was last insured").
[4] Curvature of the spine to the right. *See Stedman's* at 1734.

16.) The ALJ therefore concluded that Potter did not have a severe impairment or combination of impairments during the relevant period. *Id.*

The ALJ found that Potter has not been under a disability, as defined in the Social Security Act, at any time from January 1, 2007, the alleged onset date, through September 30, 2010, the date last insured. (Tr. 25.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on February 10, 2012, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act through September 30, 2010, the last date insured.

(Tr. 26.)

## III.   Applicable Law

### III.A.   Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence

on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B. Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical

functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is

responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1),

416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Potter argues that the ALJ erred in evaluating the opinions of Naresh Misir, M.D., and A.G. Lipede, M.D., in determining Potter's impairments were not severe during the relevant period. Potter contends that the ALJ should have recontacted Drs. Misir and Lipede before weighing their opinions.

Drs. Misir and Lipede both provided opinions regarding Potter's physical impairments. Although the ALJ also found that Potter's learning disorder was a non-severe medically determinable impairment, Potter does not challenge this finding. The undersigned will therefore

limit the discussion herein to Potter's physical impairments.

The ALJ found that Potter did not have a severe impairment or combination of impairments at step two of the sequential evaluation. The claimant bears the burden of proving the severity of an impairment or combination of impairments. *Kirby v. Astrue,* 500 F.3d 705, 707 (8th Cir. 2007). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.*; *see also* 20 C.F.R §§ 404.1520(c), 416.920(c). Being able to do basic work activities means having the abilities and aptitudes necessary to do most jobs, including physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b); 416.921(b). Although severity is not an onerous requirement to meet, it is also "not a toothless standard." *Kirby*, 500 F.3d at 708.

A diagnosis of a given impairment does not, on its own, indicate that the impairment is severe. *Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011) ("[A]lthough [Plaintiff] was diagnosed with depression and anxiety, substantial evidence on the record supports the ALJ's finding that his depression and anxiety was not severe.").

Considering the record as a whole, the Court concludes that substantial evidence supports the ALJ's finding that Potter's impairments, considered individually or in combination, were not severe during the alleged disability period.

The opinions of both Drs. Misir and Lipede were provided after the expiration of Potter's insured status. Dr. Misir completed a Medical Source Statement-Physical on February 17, 2012, in which he expressed the opinion that Potter could lift or carry less than five pounds frequently

and ten pounds occasionally; stand or walk continuously for less than fifteen minutes, and stand or walk throughout an eight-hour day for less than one hour; sit continuously for less than fifteen minutes and sit throughout an eight-hour workday for less than one hour; push or pull no more than five pounds; can never climb, balance, stoop, kneel, crouch, crawl, reach, or handle; should avoid any exposure to vibration, hazards, and heights; and should avoid moderate exposure to extreme cold, extreme heat, weather, wetness/humidity, dust/fumes. (Tr. 348-49.) Dr. Misir also indicated that Potter needs to lie down or recline to alleviate pain for fifteen-minute intervals four times in an eight-hour workday. (Tr. 349.)

Dr. Lipede completed a Physical Medical Source Statement on August 29, 2013, in which he indicated that Potter was diagnosed with thoracolumbar kyphoscoliosis, with findings of spinal cord compression at T12/13. (Tr. 405.) Dr. Lipede expressed the opinion that Potter could walk one city block without rest or severe pain; sit and stand for fifteen minutes at a time; sit, stand, or walk a total of less than two hours in an eight-hour workday; needs to walk every fifteen minutes during an eight-hour workday; needs to take unscheduled breaks every fifteen minutes during a workday; can occasionally lift and carry less than ten pounds and can never carry more than ten pounds; can never twist, crouch, or climb ladders; can rarely climb stairs; can occasionally stoop; is likely to be off task due to his symptoms twenty-five percent or more of the workday; is likely to have good and bad days; and was likely to be absent from work as a result of his impairments about twenty days a month. (Tr. 405-06.) He indicated that these limitations had been present since 2008. (Tr. 406.)

The ALJ assigned both of these opinions "very little" weight. (Tr. 21-22.) "'It is the ALJ's function to resolve conflicts among the various treating and examining physicians.'" *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421

F.3d 745, 749–50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012–13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785–86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F .3d 909, 927 (8th Cir. 2011). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty. 20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

With regard to Dr. Lipede, the ALJ found that his opinion regarding Potter's functional limitations was inconsistent with and unsupported by the medical evidence of record through September 30, 2010, the date last insured. (Tr. 21.) The ALJ noted that the record contains very little objective medical evidence showing abnormalities of Potter's spine prior to the date last insured. *Id.* The ALJ stated that the record also does not show that Potter sought treatment for his allegedly disabling spinal impairments between January 1, 2007, and September 30, 2010. *Id.*

He noted that Potter had no complaints of back pain at physician visits in 2010 and 2011, and in February of 2012 reported that his back pain had been present for only one year. (Tr. 21, 389.) The ALJ stated that Dr. Lipede's treatment notes show that he diagnosed Potter with thoracic compressive myelopathy as well as thoracolumbar kyphoscoliosis, but the record contains no objective medical evidence substantiating the presence of myelopathy or spinal cord compression prior to 2012. (Tr. 22, 407-09.) He stated that, overall, the evidence does not support Dr. Lipede's opinion that the assessed limitations began in 2008. (Tr. 22.) In addition, the ALJ pointed out that Dr. Lipede did not begin treating Potter until August 29, 2013, nearly three years after the date last insured, and that his treating relationship was brief when he rendered his opinion. *Id.*

The undersigned finds that the ALJ provided sufficient reasons for assigning little weight to Dr. Lipede's opinion. The limitations Dr. Lipede assessed were based entirely on Potter's spinal impairment. The only medical evidence of record showing that Potter had any spinal abnormalities prior to his date last insured is one x-ray report dated August 16, 1996. (Tr. 17, 366.) These x-rays revealed 45 degrees of thoracolumbar dextroscoliosis at the T12 to L5 levels, due to fused hemivertebral bodies on the left at the T11-T12 level and on the right at the T13-L1 level. *Id.* Potter, however, has a history of working at the substantial gainful activity level, and worked full-time at a job that required him to lift 35 pounds from 2003 to 2005. (Tr. 17, 39-40.) That a claimant works with an impairment for years "demonstrate[s] the impairments are not disabling in the present" absent evidence of significant deterioration of his condition. *Goff v. Barnhart,* 421 F.3d 785, 792–93 (8th Cir. 2005); *Cagle v. Astrue,* No. 1:09 CV 40 HEA/MLM, 2010 WL 1539111, at *9 (E.D. Mo. Mar. 30, 2010). In addition, Potter reported that he stopped working at this job only because of personal conflict with the owner (Tr. 40), and not due to his

physical impairments.  *See Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) (claimant's leaving work for reasons unrelated to medical condition detracted from credibility).

The record contains no additional objective medical evidence of any back or spine problems until 2012.  The ALJ acknowledged that imaging performed in February of 2012 revealed thoracolumbar kyphoscoliosis as well as degenerative disc disease and spondylosis.  (Tr. 353.)  There is no objective medical evidence, however, showing such severe abnormalities prior to the date last insured.  Significantly, Potter testified at the hearing that his back pain became "unbearable" in 2007 (Tr. 42), yet Potter did not seek treatment for his allegedly disabling spinal impairments between January 1, 2007, and September 30, 2010, and no musculoskeletal abnormalities were noted on examination during this period.  Thus, Dr. Lipede's opinion that Potter had significant restrictions due to his spinal impairments as of 2008 is not supported by the record.

Potter argues that, if the ALJ "was confused as to how Dr. Lipede could present such an opinion, the ALJ should have contacted Dr. Lipede for clarification."  (Doc. 18 at 11.)  Potter relies on *O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003), for the proposition that the ALJ has a duty to recontact a treating physician for "additional evidence or clarification."

The ALJ has the duty to develop the record, which includes developing the record as to the medical opinion of the claimant's treating physician.  *Higgens v. Apfel,* 136 F. Supp.2d 971, 978 (E.D. Mo. 2001) (citing *Brown v. Bowen,* 827 F.2d 311, 312 (8th Cir. 1987).  The ALJ is required to recontact medical sources and may order consultative evaluations only if the available evidence does not provide an adequate basis for determining the merits of the disability claim.  *Sultan v. Barnhart,* 368 F.3d 857, 863 (8th Cir. 2004); *see* 20 C.F.R. § 404.1520b(c) (giving the Commissioner discretion to recontact a treating physician where evidence is inconsistent or

insufficient). The ALJ is not required, however, to contact the treating physician whenever the ALJ rejects that opinion. *See Hacker v. Barnhart,* 459 F.3d 934, 938 (8th Cir. 2006).

In *O'Donnell*, upon which Potter relies, the Eighth Circuit held that the ALJ erred in assigning no weight to the opinion of a treating neurologist who had treated the claimant "for over five years, has prescribed powerful pain medications, and has referred [the claimant] to the Mayo Clinic for evaluation and to pain management clinics for physical therapy, trigger point injections, and epidural nerve blocks." 318 F.3d at 818. The Court found that, under these circumstances, if the ALJ believed the neurologist's opinions were of no value, "given the extensive treatment history," he should have contacted the neurologist for "additional evidence or clarification." *Id.*

In this case, contrary to the claimant in *O'Donnell*, Potter had not been receiving treatment from Dr. Lipede for years that included powerful pain medications and referrals to experts when Dr. Lipede rendered his opinion. Rather, Dr. Lipede did not begin treating Potter until August 29, 2013, nearly three years after the date last insured, and provided his opinion less than one month later. Potter received no treatment for back pain during the relevant period, from Dr. Lipede or otherwise. Substantial evidence establishes that the ALJ had sufficient evidence to determine whether Potter was disabled during the relevant period. The ALJ was not confused about Dr. Lipede's opinion. Instead, he rejected Dr. Lipede's opinion because it was inconsistent with the record. Thus, the ALJ was not required to recontact Dr. Lipede. *See Tellez v. Barnhart,* 403 F.3d 953, 956–57 (8th Cir. 2005) (holding that the ALJ was not required to obtain additional medical opinions where "there [was] no indication that the ALJ felt unable to make the assessment he did and his conclusion [was] supported by substantial evidence").

As to Dr. Misir, the ALJ noted that Dr. Misir did not provide an opinion as to when the assessed limitations began. (Tr. 22.) The ALJ indicated that Dr. Misir's opinion rendered in

February of 2012, more than one year after Potter's date last insured, was "not particularly timely in evaluating the claimant's impairments and limitations between January 1, 2007, and September 30, 2010." *Id.* The ALJ stated that Dr. Misir treated Potter only once between his alleged onset date of disability and his date last insured, in March of 2010. (Tr. 11, 398-400.) The ALJ found that Dr. Misir's opinion is based upon a very limited treating relationship with Potter during the pertinent period. (Tr. 22.)

The ALJ provided sufficient reasons for assigning little weight to Dr. Misir's opinion. The evidence of record, as discussed with regard to Dr. Lipede's opinion, reveals that Potter received no treatment for back pain nor were any spinal abnormalities noted on examination during the relevant period. Potter saw Dr. Misir on one occasion during the relevant period—on March 25, 2010. (Tr. 398-400.) Potter presented to Dr. Misir with "asthma concerns" at that time. (Tr. 398.) Upon examination, Potter was in no apparent distress, his respiratory examination was normal, his lungs were clear, he had normal musculature, no skeletal tenderness or joint deformity, and his extremities were normal. (Tr. 398-99.) Dr. Misir diagnosed Potter with chronic intrinsic asthma not otherwise specified, and stated that there was no evidence of systemic disease. *Id.* He prescribed two asthma inhalers. (Tr. 399-400.) It is significant that Potter did not complain of back pain during his only visit with Dr. Misir during the relevant period, nor did Dr. Misir note any musculoskeletal abnormalities on examination. Further, when Potter first complained of back pain to Dr. Misir in February of 2012, he indicated that the problem started only one year prior. (Tr. 389.) Thus, Dr. Misir's own treatment notes reveal that the limitations he assessed in February 2012 were not present during the relevant period. Because there was substantial evidence in the record to allow the ALJ to make a fully informed decision, he was not required to recontact Dr. Misir.

In sum, the ALJ did not err in failing to recontact Drs. Lipede or Misir. The record was sufficient for the ALJ to make a decision. The ALJ properly discredited the opinions of Drs. Lipede and Misir because their opinions were inconsistent with the record. The record reveals that Potter did not have a severe impairment during the relevant period. The sequential evaluation process ends at step two if the impairment has no more than a minimal effect on the claimant's ability to work. *Kirby,* 500 F.3d at 707; *Hudson v. Bowen,* 870 F.2d 1392, 1396 (8th Cir. 1989). Thus, the ALJ's decision finding Potter not disabled from January 1, 2007, through September 30, 2010 is supported by substantial evidence in the record as a whole.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

>/s/ Abbie Crites-Leoni
>ABBIE CRITES-LEONI
>UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of September, 2016.